FILED
SUPERIOR COURT
OF GUAM

2023 OCT 27 AM 11: 09

CLERK OF COURT

BY:_____

## IN THE SUPERIOR COURT OF GUAM

LUCIA EUSTAQUIO GARCIA McDONALD,

      Plaintiff,

vs.

MARLENE McDONALD CARBULLIDO, DOLORES McDONALD PANGELINAN, CLAIRE McDONALD MENO and, PATRICIA McDONALD TERLAJE,

      Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**CIVIL CASE NO.: CV0689-21**

**DECISION & ORDER
RE: MOTION TO DISMISS
& MOTION TO STRIKE**

## I. INTRODUCTION

This matter involves a dispute regarding the transfer of real and personal property from a mother to four of her children.[1] The parties to this case are Plaintiff Lucia Eustaquio Garcia McDonald ("Tan Lula") and four of her daughters – Defendants Marlene McDonald Carbullido ("Marlene"), Dolores McDonald Pangelinan ("Dolores"), Claire McDonald Meno ("Claire"), and Patricia McDonald Terlaje ("Patricia") (hereinafter collectively referred to as "Defendants").[2] Tan Lula, who is ninety-four (94) years old at the time of the filing of the Complaint in this matter, alleges that Defendants inserted themselves into her life with the intent to create a dependent relationship, and then used that dependent relationship to take advantage of her advanced age,

---

[1] Tan Lula has eight (8) other children who are not parties to this action.
[2] Because members of the McDonald family share the same middle/last name, they are referred to by their first names for clarity, intending no disrespect.

1 | Page

deteriorating medical condition and lack of education and English language skills to deceive her to convey real and personal property to Defendants.

The Court here considers Marlene and Dolores's Motion to Dismiss Complaint filed on November 30, 2021, and Patricia's Motion to Strike (and Joinder in Motions to Dismiss…) filed on November 30, 2021[3]. Claire filed Defendant Claire McDonald Meno's Joinder…Motion to Dismiss on or about November 30, 2021 and Joinder in Patricia's Motion to Strike on December 1, 2021. Marlene and Dolores filed a Joinder in Patricia's Motion to Strike on December 1, 2021. Tan Lula filed Plaintiff's Opposition to Defendants' Motion to Strike and Dismiss on January 12, 2022. Marlene and Dolores filed a Reply to Plaintiff's Objection to Motion to Dismiss on January 26, 2022. Patricia filed a Reply RE: Opposition to Motion to Strike [] and Reply to Opposition to Joined Motions to Dismiss…on January 26, 2022. Claire filed Defendant Claire McDonald Meno's Reply to Plaintiff's Opposition to Defendants' Motion to Strike and Dismiss on or about January 26, 2022.

## II. **FACTUAL AND PROCEDURAL BACKGROUND**

At this stage of litigation, the Court accepts all factual statements in the Complaint as true. *Taitano v. Calvo Fin. Corp.* 2008 Guam 12 ¶ 2. Tan Lula's husband passed away in 1996, leaving Tan Lula as the recipient of her husband's pension and benefits through the Office of Veterans Affairs, as well as the sole owner of all the real property acquired in the marriage. Sometime thereafter, Defendants moved to designate Patricia as a fiduciary agent with the Office of Veterans Affairs to secure their control over the military benefits intended for Tan Lula. On or about October 29, 2010, Defendants allegedly exerted a predominant and undue influence over Tan Lula, and she was induced, deceived and coerced to execute a Deed of Gift with Reservation of Life Estate which

---

[3] The Court has declined oral argument for the Motion to Strike and has sent CVR 7.1, Form 3 to the Parties previously.

conveyed some five (5) parcels of real property to Marlene. *See,* Exhibit 1 to Declaration of Georgette Bello Concepcion in Support of Motion to Dismiss Complaint. Marlene paid neither consideration nor exchanged substantial consideration for the conveyance of the five parcels of real property. On or about June 22, 2011, Tan Lula executed an Amended Deed of Gift with Reservation of Life Estate (which appears to change the lot description for parcel number #3). *See,* Exhibit 2 to Declaration of Georgette Bello Concepcion in Support of Motion to Dismiss Complaint. Marlene paid neither consideration nor exchanged substantial consideration for the Amended Deed of Gift with Reservation of Life. On or about April 18, 2017, Tan Lula executed a General Power of Attorney, granting the right to act as attorney-in-fact over her affairs to Dolores, Marlene, and Patricia. *See,* Exhibit 4 to Declaration of Georgette Bello Concepcion in Support of Motion to Dismiss Complaint. This authority was then allegedly used to transfer personal property to Defendants. It is undisputed that all three (3) documents were executed by Tan Lula and recorded in the Government of Guam Department of Land Management Office of the Recorder.

On June 29, 2020, Dolores and Claire filed a petition to serve as guardians of Tan Lula, asserting that she suffers from severe dementia and being unable to manage her own financial, legal, or medical affairs. This initiated Special Proceedings Case SP0087-20, *In the Matter of the Guardianship of the Person and Estate of Lucia G. McDonald.* The pleadings in this matter set forth that the Department of Veterans Affairs had been reviewing evidence, since August 25, 2011, about Tan Lula's ability to handle her financial affairs. On or about March 29, 2013, the Department of Veterans Affairs ("VA") determined that Tan Lula was not competent for VA purposes and set forth that the evidence shows that her "disability keep[s] [her] from ably managing [her] Department of Veterans Affairs (VA) benefits". *See,* Declaration of Claire Meno

in Support of Reply to Objection to Competency...., page 7, SP0087-20 (Feb. 16, 2021). The Guardianship proceeding, SP0087-20, is still pending.

On or about April 21, 2021, Tan Lula demanded the return of her real property. On or about July 17, 2021, Tan Lula lodged a complaint with the Office of Veterans Affairs against her fiduciary agent, Patricia, and demanded an accounting. On September 23, 2021, Tan Lula initiated the instant action by filing a Complaint and Demand for Jury Trial alleging that all transfers of her real and personal property-mentioned were concluded as the result of Defendants' fraudulent activities. Specifically, Tan Lula alleges that Defendants inserted themselves into her life with the design and intent to create a dependent relationship, and then used that dependent relationship to take advantage of her advanced age, deteriorating medical condition and lack of education and English language skills to deceive her to convey real and personal property to Defendants without consideration between 2010 and 2017. In relation to these allegations, the Complaint contains the following causes of action:

- Fraud and Deceit;
- Aiding and Abetting Fraud and Deceit;
- Undue Influence;
- Constructive Fraud;
- Declaratory Relief/Deeds and POA Void *Ab Initio*;
- Accounting;
- Breach of Fiduciary Duty;
- Aiding and Abetting a Breach of Fiduciary Duty;
- Conversion; and
- Quiet Title.

Defendants now move to dismiss the Complaint in its entirety pursuant to Guam Rules of Civil Procedure 12(b)(2) and (6). A hearing was held on the Motion to Dismiss on August 25, 2023, wherein the Court took the matter under advisement. The Court now issues this Decision and Order.

# III. LAW AND DISCUSSION

## A. Marlene and Dolores's Motion to Dismiss.[4]

### 1. Statute of Limitations.

Marlene and Dolores first request that the Court dismiss the Complaint under the statute of limitations, which is three (3) years for actions which arise from fraud. 7 GCA § 11305(d). As a preliminary matter, the Court notes that all the Complaint's counts arise from fraud and are therefore subject to the three-year statute of limitations. While certain causes of action do not specifically use the word "fraud," they are all based upon allegedly fraudulent conduct. "Fraud can be averred by specifically alleging fraud, or by alleging facts that necessarily constitute fraud (even if the word 'fraud' is not used)." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003). Undue influence is a species of fraud. *Hannah v. Guerrero*, 2020 Guam 15. Aiding and abetting fraud is also a species of fraud. *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 292 (2d Cir. 2006). The Fourth Cause of Action (Declaratory Relief) seeks a judgment that the Deeds of Gift and General Power of Attorney are null and void because they "were executed and are the product of [Defendants] fraud, deceit, and undue influence." *See*, Compl. ¶ ¶ 70, 74. The Sixth Cause of Action (Breach of Fiduciary Duty) and Eighth Cause of Action (Conversion) allege that Defendants converted Tan Lula's personal property while acting "with oppression, fraud, and malice." *Id.* ¶ ¶ 83, 92. The Fifth Cause of Action (Accounting) and the Ninth Cause of Action (Quiet Title) also stem from the same alleged fraud.

Under Guam law, the elements of fraud are "(1) a misrepresentation; (2) knowledge of falsity (or scienter); (3) intent to defraud to induce reliance; (4) justifiable reliance; and (5) resulting damages." *Taitano v. Calvo Fin. Corp.* 2008 Guam 12 ¶ 12. "The cause of action in

---

[4] This motion has been joined by the remaining Defendants.

[fraud is] not to be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud or mistake." *Id.* ¶ 30. "The statute of limitations will begin to run when the plaintiff suspects or should suspect that his injury was caused by wrongdoing or that someone has done something wrong to him." *Id.* ¶ 45. "Discovery does not mean actual knowledge. Discovery means when a plaintiff could have discovered the wrongful acts with reasonable diligence. Reasonable diligence is tested by an objective standard, and when the unconverted evidence irrefutably demonstrates that the plaintiff discovered or should have discovered the fraudulent conduct, the issue may be resolved by summary judgment." *Id.*

Tan Lula filed the Complaint on September 23, 2021. Defendants argue that the statute of limitations is tied to when the Deeds of Gift and General Power of Attorney were recorded in the Government of Guam Department of Land Management Office of the Recorder and made a matter of public record. Defendants argue that the statute of limitations for the real property conveyances begin to run, at the latest, on June 22, 2011, when the Amended Deed of Gift with Reservation of Life was recorded. *See,* Motion to Dismiss, pages 6-7. Defendants also argue that the claims relating to action taken under the General Power of Attorney ("GPOA") begin to run on or about April 18, 2017, when the GPOA was also recorded and made a matter of public record. Tan Lula argues that the statute of limitations did not begin when the conveyances and recording occurred due to the doctrine of equitable tolling. Specifically, Tan Lula argues that the statute of limitations was tolled until she discovered the fraudulent scheme on or about June 29, 2020, the date when Dolores and Claire filed their petition for guardianship over Tan Lula and a family feud ensued. Thereafter, a demand for a return of the real property and demand for an accounting was made by Tan Lula.

///

To succeed in arguing equitable tolling, a plaintiff must show he or she could not "by the exercise of reasonable diligence have discovered essential information bearing on his [or her] claim," but does not need to allege that the defendant acted in any way to obscure the potential claim. *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 451–52 (7th Cir. 1990). When considering equitable tolling during a Rule 12(b)(6) motion, "the applicability of equitable tolling depends on matters outside of the pleadings, so it is rarely appropriate to grant a Rule 12(b)(6) motion to dismiss." *Taitano v. Calvo Finance Corp.*, 2008 Guam 12 ¶ 46 (quoting *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 1003-04 (9th Cir. 2006)). "The question of when a party discovered or should have discovered fraud which would toll the statute of limitations is for the jury." *Vandegrift v. Lagrone*, 477 So.2d 292, 295 (Ala. 1985). However, dismissal due to the statute of limitations may be warranted despite an assertion of equitable tolling where "some fact, evident from the face of the complaint, support[s] the conclusion that the plaintiff could not prevail, as a matter of law, on the equitable tolling issue." *Taitano*, 2008 Guam 12 ¶ 46 (quoting *Cervantes v. City of San Diego*, 5 F.3d 1273, 1276 (9th Cir. 1993).

At this stage, the question is whether Tan Lula's Complaint adequately alleges equitable tolling. To avail of equitable tolling, plaintiffs must specifically plead facts showing why they were unable to make an earlier discovery despite reasonable diligence. *Taitano*, 2008 Guam 12 ¶ 52. The Court finds that the Complaint alleges sufficient facts to establish that Defendants inserted themselves in Tan Lula's life, creating a dependent relationship that prevented Tan Lula from discovering essential information relevant to her claims.

Statements regarding Tan Lula's dependency are found throughout the Complaint. An illustrative example is Paragraph 8, which states the following: "[Defendants] over a period of years created an environment of dependency by excluding Tan Lula's other adult children and

grandchildren, by taking advantage of her lack of education, her limited command of the English language, her advanced age and abusing their cultural status as daughters, that subjected Tan Lula to be deceived and imposed upon by artful or designing persons." Paragraph 16 which states that [Defendants] moved to designate a fiduciary agent with the Office of Veterans Affairs to secure their control over the benefits intended for Tan Lula. Paragraph 17 which states that [Defendants] transported Tan Lula to her doctor's appointments and, without the consent of Tan Lula, directed her health care to the exclusion of Tan Lula.... Paragraph 18 which states that [Defendants] "inserted themselves into the financial accounts of Tan Lula, naming themselves as joint owners or the identified beneficiary of the financial account....agreed to withhold funds from Tan Lula, and determined in their own judgement whether to provide any funds to Tan Lula, making Tan Lula completely dependent on the will of [Defendant's] for money. Paragraph 64 which states that [Defendants] "promised to act fairly and justly with Tan Lula...the promise to act fairly and justly with Tan Lula was false; their promise to act in Tan Lula's best interests was false; their promise to protect Tan Lula from artful or designing persons was false...." Paragraph 81 which states that "[Defendants] violated their fiduciary duties to Tan Lula by converting her personal property, including but not limited to accounts and funds held in the Bank of Hawaii and Coast 360 Federal Credit Union to the [Defendants' use]. Paragraph 85 which states that [Defendants] had personal knowledge of her history, circumstances and advanced age of their mother requiring the assistance of others to manage her personal property...created confusion...caused the conveyance of real property to [Marlene] without any consideration, ...obtained a designated fiduciary with the Office of Veterans Affairs,...obtained a GPOA to gain access to all of Tan Lula's personal property held in financial institutions.

///

The Court also notes that the Complaint adequately alleges that Defendants had early on established a fiduciary relationship with the appointment of Patricia as the fiduciary agent, controlling all of Tan Lula's VA benefits. The eventual execution of the GPOA gave Marlene, Dolores, and Patricia control over all of Tan Lula's remaining assets. The existence of a fiduciary relationship between the parties is a fact to consider in determining whether a plaintiff has exercised reasonable diligence in the inquiry into the existence and cause of his injury. *Gayle v. Hemlani*, 2000 Guam 25 ¶ 25.

The Court also notes that the Complaint sets forth sufficient allegations as to the deteriorating mental condition of Tan Lula, which would impact her ability to discover the existence of alleged wrongdoing on the part of Defendants. The Complaint sets forth in Paragraph 16 that the Defendants moved to have a fiduciary agent appointed to take control over Tan Lula's military benefits. The Court takes judicial notice of certain documents filed in the Guardianship Case, SP0087-20, which relate to Tan Lula's ability to comprehend the nature of her proceedings. *See, Taitano*, 2008 Guam 12 ¶ 2. Specifically, the March 29, 2013, determination letter from the Department of Veterans Affairs, which sets forth that Tan Lula was not competent for VA purposes and that the evidence shows that her "disability keeps [her] from ably managing [her] Department of Veterans Affairs (VA) benefits". *See,* Declaration of Claire Meno in Support of Reply to Objection to Competency…, page 7, SP0087-20 (Feb. 16, 2021). This letter from the Department of Veterans Affairs sets forth that it had been reviewing evidence since August 25, 2011, about Tan Lula's ability to handle her VA benefits. This letter sets forth enough facts that Tan Lula, as far back as 2011 and perhaps longer, was having issues managing her affairs due to a disability/ medical condition.

///

Additionally, Claire's reply brief filed in this matter, contains a letter written on June 19, 2020, by Dr. Justin S. Hale of Guam Regional Medical City which states that Tan Lula scored an 8 (out of 30) on the Montreal Cognitive Assessment (MOCA) on that date, which is consistent with severe dementia. *See,* Exhibit A to Defendant Claire McDonald Meno's Reply to Plaintiff's Opposition to Defendants' Motion to Strike and Dismiss. As stated by Dr. Hale, Tan Lula does not have the capacity to manage her own financial, legal, or medical affairs. While this test certainly is not conclusive as to Tan Lula's mental capacity several years prior, it does support a finding that Tan Lula's mental condition could have prevented her from discovering that she had been allegedly exploited.

Courts have long held that mental weakness, to which one cannot manage the ordinary affairs of life has a bearing on whether one is able to guard himself against imposition, or to resist importunity or undue influence. *See, Parker v. Ross,* 367 So. 3d 151, 157-158 (Miss. 2023) (holding that dismissal under the statute of limitations was inappropriate in a son's action that alleged mismanagement of trusts, sought to recover real property that was allegedly improperly sold and asserted numerous claims, including bad faith, unjust enrichment, and breach of fiduciary duty where the soundness of mind of the settlor's son tolled the general three (3) year statute of limitations.); *U.S. Fid. & Guar. Co. v. Conservatorship of Melson,* 809 So.2d 647, 653 (Miss. 2002) (holding that the test for determining whether a person is of unsound mind for purposes of tolling a statutory limitations period is: "Is his mind so unsound, or is he so weak in mind...no matter what cause, that he cannot manage the ordinary affairs of life?"); *Johnson v. State,* 945 P.2d 673, 674 (Utah 1997) (explaining that Utah's Tolling Statute was "obviously intended to prevent a person from losing the opportunity to bring a claim where circumstances precluded either proper notice or a realistic effort to pursue the claim".); *Bank of Commerce v. Barton,* 605 S.W.2d 638,

639-40 (Tex. App.-Fort Worth 1980) (evidence of unsound mind created fact issue making summary judgement improper where the administrator of the estate of a deceased mother sought to cancel a deed executed by a mother to her daughter and son-in-law alleging diminished mental capacity and overreaching.); *Dunn v. Towle,* 170 Ga. App. 487, 488 (1984) (holding that whether because of senility, or undue influence, or misplaced trust and confidence, or affirmative misrepresentations, or for whatever reasons (there is conflicting evidence as to the decedent's mental acuity) the statute of limitations is tolled until such time as the fraudulent conduct was discovered). The Complaint alleges sufficient facts for purposes of defeating a Motion to Dismiss, that Tan Lula's deteriorating medical condition played a part in her ability to reasonably discover any of the alleged fraudulent conduct taken on the part of the Defendants.

The Court recognizes that Guam law also provides for statutory tolling in certain instances which may apply in this case. For both actions involving real and personal property, Guam law allows for tolling of the statute of limitations for periods when the plaintiff is deemed "insane." 7 GCA §§ 11215, 11404. "[I]nsanity, for purposes of Guam's tolling statute, turns on the determinative issue of whether a person has demonstrated a severe mental impairment that affects his or her ability to comprehend rights or acts that he would otherwise understand. Absent this ability to comprehend, the time in which to commence a cause of action is tolled until the disability ends." *Custodio v. Boonprakong,* 1999 Guam 5 ¶ 15. Further, 21 GCA § 29139 states "If a deed or other instrument is registered, which is forged, or executed by a person under a legal disability, such registration shall be void...." Courts have long recognized that statutory tolling serves the constitutional goal of ensuring that the statute of limitations does not unreasonably deny those with mental disabilities access to the courts. *See, Draughon v. Johnson,* 631 S.W.3d 81, 89-95 (Tex. 2021).

Both the allegations in the Complaint and the judicially noticed documents independently and sufficiently indicate that there is a legitimate factual question as to whether Tan Lula was able to ascertain that Defendants were allegedly taking advantage of her prior to the filing of the Guardianship proceeding. The Complaint adequately pleads facts regarding Tan Lula's inability to fully understand her actions, such as her deteriorating mental condition, inability to mentally manage the ordinary affairs of her life and lack of understanding of the English language. Considered in the context of substantial real property conveyances made without consideration, these factors raise a question of fact as to whether equitable tolling applies.

Courts have long held that conveyances made without consideration bears on the question of the mental capacity of the grantor's ability to understand the nature and consequence of her act. *See, Estate of Harris v. Harris*, 2017 WL 936117 at *4 (Iowa Ct. App. 2017) (the court in affirming the trial court's setting aside of a quit claim deed by a mother to her youngest son gave deference to the district court's finding that the mother was in poor physical condition when she executed the deed, the consideration was for the nominal amount of one dollar ($1.00), the mother did not receive independent advice regarding the transfer of her property and the transfer of the property left the mother with essentially no assets); *Puryear v. Austin*, 39 So. 2d 257, 260-262 (Miss. 1949) (holding that imposition or undue influence will be inferred; where there is gross inadequacy of consideration for the conveyance and the grantor was of mental weakness); *Black v. Duffie*, 508 S.W. 3d 40, 49 (Ark. App. 2016) (finding that the gross inadequacy of price in the transfer of property is a circumstance bearing on the question of mental capacity). Here, the conveyances of real property by Tan Lula to Marlene were for zero consideration and left Tan Lula with essentially no assets.

///

Based on the foregoing, the Court finds that dismissal on statute of limitations grounds is inappropriate at this stage of the litigation.

2. Failure to Plead Fraud with Particularity.

Marlene and Dolores next request that the Court dismiss the Complaint, pursuant to Rule 9(b) of the Guam Rules of Civil Procedure, based upon Tan Lula's failure to identify the role each Defendant had in the alleged fraudulent scheme to defraud Tan Lula of her personal and real property.

The Guam Rules of Civil Procedure ("GRCP") provide that "[a] pleading which sets forth a claim for relief … shall contain … a short and plain statement of the claim showing that the pleader is entitled to relief." GRCP 8(a). Guam continues to apply a liberal, notice pleading requirement for pleadings. *See Ukau v. Wang*, 2016 Guam 26 ¶ 32. Thus, the Court will "consider each and every claim … employing the *Conley [v. Gibson*, 335 U.S. 41 (1957)] 'no set of facts' language." *Lujan v. J.L.H Trust*, 2016 Guam 24 ¶ 15.

However, complaints which allege fraud are held to a heightened standard. Rule 9(b) of the Guam Rules of Civil Procedure states that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." *See Taitano*, 2008 Guam 12 ¶ 13. However, "a plaintiff need not prove his claim of fraud at the pleadings stage. Rather, what is required is that a plaintiff set forth his claims with sufficient detail to provide notice to defendants as to what fraudulent action is being alleged." *Id.* ¶ 16.

As set forth above, each of the counts arise from fraud. Therefore, a failure to plead with particularity will lead to dismissal of the Complaint in its entirety. The particularity requirement is especially important in this matter because there are multiple defendants. Plaintiffs may not "merely lump multiple defendants together" but must "differentiate their allegations … and inform

each defendant separately of the allegations surrounding his alleged participation in the fraud." *United States v. Corinthian Colleges*, 655 F.3d 984, 997–98 (9th Cir. 2011) (quoting *Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007)). At a minimum, plaintiffs must "identify the role of each defendant in the alleged fraudulent scheme," *Swartz*, 476 F.3d at 764–65, setting out the "who, what, when, where, and how" as to each defendant. *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010).

The Complaint alleges that Defendants "created an environment of dependency in controlling [Tan Lula's] financials, transporting Tan Lula to her medical appointments and directing her medications and care," "agreed to withhold funds from Tan Lula, and determined in their own judgment whether to provide any funds to Tan Lula, making Tan Lula completely dependent on the will of [Defendant's] for money," and "exerted a predominant and undue influence over Tan Lula, and she was induced, deceived, and coerced to execute legal documents conveying real and personal property to Defendants." Compl. ¶¶ 16-29. Further, as set forth above, the Complaint contains specifics as to exactly what real property was converted, when it was converted, and who received ownership.

The Court takes particular notice of the Guam Supreme Court's analysis of the Complaint in *Ukau*:

> Ukau's Complaint alleges facts that when taken as true establish the particular transferor and transferees, the transfer of particular real properties, the dates upon which the properties were transferred, and the means by which the transfers were agreed upon and executed. Therefore, his Complaint goes far beyond a mere conclusory allegation and satisfies the heightened "particularity" pleading standard set out in Rule 9(b) for the circumstances surrounding the fraud.

*Ukau*, 2016 Guam 26 ¶ 48. As to Marlene, Dolores and Patricia, these same elements are pleaded by Tan Lula and the Complaint generally meets the particularity requirement.

Marlene is identified in Paragraphs 21-25, 43 and 49 of the Complaint as having received five (5) parcels of real property for which no consideration was paid. The conveyance of the real property is fully described, with the dates the conveyances were made. Paragraph 38 of the Complaint sets forth that Tan Lula demanded the return of her real property. Paragraph 27, states that Dolores, Marlene, and Patricia are named as attorney-in-fact under a GPOA that is executed on or about April 18, 2017. Paragraph 81 of the Complaint sets forth that Marlene, Dolores and Patricia converted Tan Lula's personal property to include accounts held in the Bank of Hawaii and Coast 360 Federal Credit Union. Patricia is identified in paragraph 16 of the Complaint as being designated as the fiduciary agent with the Office of Veterans Affairs to secure control over the benefits intended for Tan Lula. The heightened pleading standard does not require Tan Lula to document every single statement and action that Defendants made or took in creating the dependent relationship. The Complaint alleges fraud in sufficient detail to afford the requisite notice to Marlene, Dolores and Patricia.

The Complaint, however, does not sufficiently plead specificity as to what fraudulent action is being alleged against Claire. The Complaint is filled with general allegations as to actionable conduct taken by the "Designing Daughters" with only specific allegations attributable to Marlene, Dolores and Patricia. This lack of specificity is fatal as far as Claire is named as a Defendant. Unlike the other Defendants, Claire did not receive any conveyance of real property, nor was she granted power-of-attorney. Nor was Claire designated as the fiduciary agent with the Office of Veterans Affairs. There are no particular allegations in the Complaint which would inform Claire of her alleged participation in the fraudulent scheme. The only specific accusations against Claire are that she took care of Tan Lula and later petitioned to become her guardian. These facts do not rise to the level of fraud. The Court finds that the Complaint fails to plead sufficient

facts to allow Claire to properly respond to the allegations. Therefore, all claims against Claire are hereby dismissed without prejudice.[5] *See, Swartz v. KPMG LLP,* 476 F.3d 756, 765 (9th Cir 2007); *Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097, 1107 (9th Cir. 2003) (finding that dismissals under Rule 9(b) are "functionally equivalent" to dismissal under Rule 12(b)(6) and should be without prejudice if defects are curable).

### 3. The Demand for Accounting is Not Under This Court's Jurisdiction.

Marlene and Dolores next request that the Court dismiss the Complaint's Fifth Cause of Action for an Accounting. This Fifth Cause of Action alleges that Defendants used the GPOA granted on April 18, 2017, and Patricia's appointment as the fiduciary agent for all of the VA benefits, to take possession of Tan Lula's financial assets, and that Defendants have further "refused to give an accounting of their use of the General Power of Attorney [] and the designation of fiduciary agency." Compl. ¶ 76-79. Tan Lula therefore asks the Court to order an accounting under 15 GCA § 4303, which states the following:

> Upon complaint under oath made by a guardian, ward, creditor or other person interested in the ward's estate, or having a prospective interest therein as heir or otherwise, that any person is suspected of having embezzled, concealed, smuggled, or fraudulently disposed of any property of the ward or has in his possession or has knowledge of any instrument in writing belonging to the ward, the court or judge may cite the suspected person to appear before the court, and may examine and proceed against him on such charge in the manner provided in this Title, with respect to persons suspected of having embezzled, concealed, smuggled or fraudulently disposed of property of a decedent.

15 GCA § 4303

In the Motion to Dismiss, Marlene and Dolores argue that Section 4303 is only applicable in probate proceedings and therefore this cause of action should be dismissed from the instant civil proceeding. The Court agrees. The Court notes that the Guardianship proceeding, SP0087-20, is

---

[5] In Plaintiff's Opposition to Defendants' Motion to Strike and Dismiss, leave to amend is requested should the Court find that more particularity is required.

still an on-going matter. On or about January 22, 2021, Tan Lula filed a Motion for Accounting and Request for Citation pursuant to 15 GCA §4303 in the Guardianship proceeding. Based on this filing, the request for accounting can properly be pursued in the Guardianship proceeding.

In the Opposition, Tan Lula argues that the Court can take judicial notice of the Guardianship proceeding as a basis for ordering an accounting under Title 15. Taking judicial notice of the existence of the related Guardianship proceeding would not, however, somehow transform the instant matter into a probate or guardianship proceeding and render Section 4303 applicable. The same applies to Tan Lula's suggestion in the Opposition, that 7 GCA §4101 provides this Court with the ability to transform this case into a probate or guardianship proceeding. Tan Lula makes this suggestion with no other basis of authority. The Court finds that Section 4303 does not apply, and the Fifth Cause of Action is dismissed.

### B. Patricia's Motion to Strike.[6]

Patricia moves to strike portions of the Complaint under Guam Rule of Civil Procedure 12(f), which allows the Court to strike "any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Matters are 'immaterial' if they have 'no essential or important relationship to the claim for relief or the defenses being pleaded' and 'impertinent' if they do not pertain and are not necessary to the issues in question. *Marcus v. ABC Signature Studios, Inc.*, 279 F.Supp. 3d 1056, 1062 (C.D. Cal. 2017). Scandalous pleading must 'reflect cruelly' upon the defendant's moral character, use 'repulsive language' or 'detract from the dignity of the court.' *Donnelly v. Commonwealth Fin. Sys.*, 2008 WL 762085, at *4 (M.D. Pa. Mar. 20, 2008).

As a general rule, motions to strike are disfavored. *Ukau v. Wang*, 2012 WL 1503325 at *2 (D.C. Guam April 24, 2012); *Barber v. Johnson & Johnson Co.*, 2017 WL 2903255, at *3 (C.D.

---

[6] This Motion has been joined by Marlene, Dolores and Claire.

Cal. April 4, 2017). "In reviewing a motion to strike, the court must view the pleadings under attack in the light most favorable to the pleader." *Juno Therapeutics, Inc. v. Kite Pharma,* 2018 WL 1470594, at *3 (C.D. Cal. March 8, 2018). Where a movant challenges allegations as immaterial or impertinent, "[a] court must deny the motion to strike if there is any doubt whether the allegations in the pleadings might be relevant in the action." *Oracle Am., Inc. v. Micron Tech., Inc.,* 817 F. Supp. 2d 1128, 1132 (N.D. Cal. 2011).

Because "the Court must view the pleadings in a light most favorable to the pleading party," a 12(f) motion to strike will rarely be granted. *In re 2TheMart.com, Inc. Securities Litigation,* 114 F.Supp.2d 955, 965 (C.D. Cal. 2000). Denying a motion to strike in *In re 2TheMart.com,* the court described the heavy burden facing the movant:

> "Immaterial" means that the matter has no bearing on the controversy before the court ... If there is any doubt as to whether the allegations might be an issue in the action, courts will deny the motion ... "Impertinent" has been defined as allegations that are not responsive or irrelevant to the issues that arise in the action, and which are inadmissible as evidence. "Scandalous" includes allegations that cast a cruelly derogatory light on a party or other person.

*Id.*

Patricia points to several paragraphs in the Complaint which she asserts are immaterial, impertinent, or scandalous allegations. The Court will address each in turn.

First, Patricia objects to numerous paragraphs of the Complaint which detail Tan Lula's personal history, including hardships she endured early in life.[7] Here, one of the central issues of the lawsuit is whether Defendants took advantage of Tan Lula due to her advanced age, deteriorating health and lack of education and English language skills. There are legitimate

---

[7] Paragraph 5 states that Tan Lula was married to Charles McDonald from October 1948 to his death in November 1996, and lists her twelve (12) children in order of birth. Paragraph 9 provides some personal information about Tan Lula, including that she was born in 1926, survived World War II, was the daughter of an American soldier, was tortured by Japanese soldiers and was forced to watch beatings and executions.

questions of fact regarding the extent of these conditions, and Tan Lula's personal history will be a relevant factor in addressing these questions. Such background is neither impertinent nor immaterial and therefore will not be stricken. *See, Doe 1 v. University of San Francisco*, 2023 WL 5021811 at *16-17 (N.D. Cal. August 4, 2023) (the court declined to strike allegations in the complaint concerning the nature of the institution, its views on abuse of power and abuse on campus, different allegations by different plaintiffs during a different time period about different alleged abusers, holding that at the pleadings stage the court cannot say that the allegations have no possible bearing on the litigation); *Lacey v. Arpaio*, 2013 WL 12209845 at *2 (D.C. Ariz., December 11, 2013); *Fraze v. American Behavioral Health Systems Inc*, 2022 WL 2342834 at *2 (W.D. Wash., June 29, 2022) (the court denied a motion to strike allegations in the complaint concerning Plaintiff's history of sexual trauma and former addiction).

Patricia next seeks to strike paragraphs related to Defendants, specifically statements that Defendants "are Chamoru daughters with the rights and privileges afforded them in a Chamoru family" and "successful women in Guam's American Colonized culture." Compl. ¶¶ 13, 14. Again, this background is relevant. The crux of this case involves the relationship between Tan Lula and her daughters (the Defendants). Their personal backgrounds are highly relevant in making determinations regarding their interactions. Despite Patricia's argument that these allegations are included "solely for inviting racial animosity," the language used is not inflammatory and therefore falls short of the high bar necessary for the Court to strike. A motion to strike may not be granted merely because "they portray [Defendant] in an unfavorable light." *Kaiser Found. Hosps. V. California Nurses Ass'n*, 2012 WL 440634, at *4 (N.D. Cal. Feb. 10, 2012) (reasoning that the defendant would "have an opportunity to challenge these allegations as

the case proceeds"). As explained above, these allegations are directly relevant to the relationship between Tan Lula and the Defendants.

Patricia asks the Court to strike Paragraphs 31 and 32 of the Complaint as "immaterial to any cause of action and an issue of standing to sue as to injury to such persons exists as Plaintiff lacks such standing." Paragraphs 31 and 32 state as follows: "Upon information and belief, upon the other adult children discovering the attempts of [Defendants] to declare their mother incompetent, a family feud ensued. Upon information and belief, as a result of concerns raised by Tan Lula's other adult children, it was discovered that [Defendants] created a scheme to deprive Tan Lula of all her personal property and real property." Contrary to Patricia's position, this information is relevant. It establishes important factual background information for both the underlying fraud and the ultimate discovery of such fraud, which is of particular importance due to the issue of equitable tolling. While it is true that Tan Lula's other adult children stand to inherit and therefore have a potential financial interest in this case, their involvement in the factual development of this case does not raise "standing issues." The same applies to Paragraphs 51 and 59.[8] These paragraphs therefore will not be stricken. *See, McEnery v. McEnery,* 621 F. Supp. 3d 1059, 1065 (N.D. Cal. 2022) (the court in denying a motion to strike allegations that the Defendants were "exploit[ing] a family member for financial gain" found that the allegations, among other things, provide background information about the parties' relationship). Further, such a motion "should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *Barber,* 2017 WL 2903255, at *3.

---

[8] In the context of Tan Lula's cause of action for Aiding and Abetting Fraud and Deceit, Paragraph 51 states: "With the assistance and aid of each of [Defendants], as a direct and proximate cause [Defendants] damaged Tan Lula, and Tan Lula's intended heirs, in an amount to be proven at trial. Paragraph 59 uses the exact same language in the context of Tan Lula's cause of action for Undue Influence.

Patricia further objects to the Complaint's reference to Defendants collectively as "Designing Daughters," alleging that this is an "offensive slight" intended to "impute shame based on the allegations by use of this slogan." Labeling Defendants as "Designing Daughters" does not disparage Defendants any more than any other allegations in the Complaint. While this designation may impose some level of shame, it does not approach the level of incivility necessary for the Court to exercise its discretion under Rule 12(f) to strike portions of a complaint. Even what could be called colorful descriptive language is not stricken where it is material and pertinent to the claims at issue. *See, LeSEA, Inc. v. LeSEA Broad. Corp.*, 379 F. Supp. 3d 732, 733-39 (N.D. Ind. 2019); *Kuhlmey v. City of Hammond*, 2016 WL 5724484, at *2-3 (N.D. Ind. Sept. 30, 2016) (denying motion to strike characterization of defendants conduct as "shoot first, ask questions later" policy because case hinged in fact on whether defendants promulgated an improper pattern or practice").

A motion to strike should not be granted unless it is absolutely clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation. *Lilley v. Charren*, 936 F.Supp. 708, 713 (N.D.Cal. 1996). Based upon the above, the Court determines that all of what Patricia is requesting to be stricken does have a bearing on the litigation. Accordingly, Patricia's Motion to Strike is DENIED in its entirety.

## IV. CONCLUSION AND ORDER

Based on the foregoing, the Court DENIES the Motion to Dismiss as to Marlene, Dolores and Patricia. The Court GRANTS the Motion to Dismiss all counts against Claire without prejudice. The Court GRANTS the Motion to Dismiss the Complaint's Fifth Cause of Action for an Accounting. The Court DENIES in its entirety, Patricia's Motion to Strike.

Plaintiff is GRANTED LEAVE TO AMEND the Complaint as to Claire, such Amended Complaint should be filed within ten (10) days from the date of this Decision and Order. In the interests of judicial efficiency, the Court STAYS the deadline under Rule 12(a)(1) of the Guam Rules of Civil Procedure, for Marlene, Dolores and Patricia to file an Answer. If no Amended Complaint is filed within the ten (10) days permitted, then Marlene, Dolores and Patricia may file an Answer no later than ten (10) days from the expiration of the deadline to file the Amended Complaint.

SO ORDERED this 27ᵗʰ day of October, 2023.

_____
**KRISTINA L. BAIRD**
**Judge *Pro Tempore***
**Superior Court of Guam**

**SERVICE VIA E-MAIL**
I acknowledge that an electronic copy of the original was e-mailed to:
Jacqueline Terlaje, J. Cook, G. Concepcion + C. VanDeVeld
Date: 10/27 Time: 11:25am
E. Aflague Jr.
Deputy Clerk, Superior Court of Guam